## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

DARRYL TOWNSEND,

     *Plaintiff,*

   v.

VICTORIA L. KUHN, *et al*.,

     *Defendants.*

Civil Action No. 24-09010 (MCA)(JRA)

**MEMORANDUM OPINION**

  **THIS MATTER** comes before the Court on a motion to dismiss (ECF No. 16.) pursuant to Federal Rule of Civil Procedure 12(b)(6) brought by Commissioner Victoria L. Kuhn, Assistant Commissioner Erin Nardelli, Assistant Commissioner Melinda Haley, Assistant Commissioner Donna Gies, Assistant Commissioner Willie Bonds, Officer Steven Jonaitis, and Officer Jayme Tartaglia (collectively, "Defendants"), which seeks dismissal of *pro se* Plaintiff Darryl Townsend's ("Townsend" or "Plaintiff") Complaint. (ECF No. 1.) Townsend is a convicted and sentenced state prisoner and brings this action under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act ("NJCRA"), N.J. Stat. Ann. § 10:6-1 *et seq.*[1] He alleges that Defendants violated his First and Fourteenth Amendment rights by implementing and enforcing a New Jersey Department of Corrections ("NJDOC" or "DOC") policy restricting inmates from receiving adult content through the JPay digital tablet platform and through regular mail. For the reasons set forth below, Defendants' motion is **GRANTED IN PART AND DENIED IN PART**.

---

[1] The Court considers the § 1983 and NJCRA claims together.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Background

Townsend is a convicted state prisoner serving what amounts to a life sentence at New Jersey State Prison in Trenton. (ECF No. 1, Compl. ¶ 16.)  He brings suit against five NJDOC senior administrators—Commissioner Kuhn and Assistant Commissioners Nardelli (Division of Operations), Haley (Division of Legal Affairs), Gies (Division of Administration), and Bonds— as well as correctional officers Jonaitis and Tartaglia, who are assigned responsibility for screening digital content sent to inmates' JPay tablet accounts. (*Id.* ¶¶ 4–13.)  Townsend also names Officers Koch, Boyle, Cyrus, and Mendoza and fictitious defendants who have neither appeared nor been successfully served.[2]  Those defendants are not addressed in this Opinion.

Townsend challenges the NJDOC's recent policy change banning adult inmates from receiving "nude, non-nude and non-obscene sensual adult content" transmitted to their personal tablets via JPay, as well as similar content received through regular mail. (*Id.* ¶¶ 17, 19.)  Plaintiff alleges that each commissioner personally "enacts and implements the DOC policies and administrative codes for all facilities to follow, and is directly responsible for the implementation, upholding, and enforcement of the DOC policy banning inmates from receiving non-obscene adult content." (*Id.* ¶¶ 35–39.)

He further alleges that beginning on or about October 13, 2020, the officer defendants screened and withheld from him approximately 10 to 15 or more 30-second videograms and digital photographs sent to his JPay account by outside parties, which he characterizes as "non-obscene" content that officers "falsely labeled" as prohibited. (*Id.* ¶¶ 19–21.)  Townsend alleges that in "[m]any instances in which videograms were withheld from Plaintiff[,] defendants did not provide

---

[2]The U.S. Marshal returned summonses for Officers Koch, Boyle, and Mendoza unexecuted on August 7, 2025. (ECF No. 8.)  Officer Cyrus does not appear to have been issued a summons.

any due notice of their rejection whatsoever and Plaintiff had to find out on his own." (*Id.* ¶ 19.) He also identifies specific withholding incidents attributed to Officers Jonaitis, Koch, Mendoza, Tartaglia, Boyle, and Cyrus between September 2020 and July 2024. (*Id.* ¶ 21.) He further alleges that when items were rejected, officers "did not specify what acts or depictions in the videos they considered to be prohibited content" and responded to grievances by citing the general policy "without specifying what part of the policy they violated or what specific content they considered to violate said policy." (*Id.* ¶ 22.) According to the Complaint, the withheld materials are "non-obscene" and do not depict sadism, masochism, sado-masochism, bestiality, child pornography, or sexual penetration. (*Id.* ¶¶ 21, 33.) The DOC policy allegedly bans inmates "from receiving pornographic, nude, non-obscene and non-nude sensual content to the privacy of their tablets" even though inmates are permitted to watch movies and television programs that depict male and female individuals "in bikinis or with pasties covering nipples, on beaches, dancing provocatively, wearing lingerie, and even depicts nudity and sexual acts and penetration." (*Id.* ¶¶ 23-24.)

Townsend further contends that the DOC policy serves no legitimate penological interest and was "implemented to spite, harass and oppress inmates by denying them something that is of popular interest among inmates which they know [inmates] like and which brings them a semblance of joy with the little bit of liberty they have left." (*Id.* ¶ 25; *see also id.* ¶ 26 (alleging that the policy is designed to "repress, suppress and frustrate [inmates'] natural attraction" and to "psychologically torment and torture inmates' psyche.").) He further characterizes the policy as an attempt to "act like Iranian 'moral' police by compelling inmates to follow and accept their moral, political and religious principles." (*Id.* ¶ 29.)

Townsend asserts four causes of action: (1) violation of the First Amendment's Free Speech Clause based on the DOC's policy banning non-obscene adult content (Count I, against all defendants); (2) violation of the First Amendment's Establishment Clause on the theory that the

policy imposes Defendants' religious and moral values on inmates (Count II, against all defendants); (3) violation of the Fourteenth Amendment's Due Process Clause based on Defendants' alleged failure to provide adequate notice when rejecting digital content (Count III, against the officer defendants); and (4) violation of the Fourteenth Amendment's Equal Protection Clause (Count IV, against all defendants).  (Compl. ¶¶ 41–59.)

Plaintiff states that "[t]his suit seeks injunctive relief ordering defendants to end the policy banning non[-]obscene adult sensual content sent to the privacy of inmates' tablets or via any other means, and ordering defendants to forward to Plaintiff all such content that has been withheld from him."  (*Id.* ¶ 40.)  In the relief section, he seeks declaratory relief, injunctive relief, compensatory and punitive damages, costs, and attorneys' fees.  (*Id.* ¶ 61.)

## B.  Procedural History

Townsend filed his Complaint on September 6, 2024.  (ECF No. 1.)  The Court granted his application to proceed *in forma pauperis* on September 11, 2024.  (ECF No. 3.)  Summonses were issued on October 16, 2024.  (ECF No. 5.)  Defendants Kuhn, Nardelli, Haley, Gies, Bonds, and Jonaitis were served on August 1, 2025; Defendant Tartaglia was served on August 13, 2025.  (ECF Nos. 9, 10.)  After obtaining a sixty-day extension, Defendants filed the present motion to dismiss on October 20, 2025.  (ECF Nos. 12, 16.)

Townsend did not file a brief in opposition.  On November 12, 2025, he filed a letter requesting a thirty-day extension of time to respond  (ECF No. 17), but no opposition brief followed.  On January 13, 2026, Townsend filed a letter and a proposed order to show cause seeking injunctive relief.  (ECF Nos. 18, 19.)  On January 23, 2026, Magistrate Judge Almonte entered a text order directing that the pending motion to dismiss be resolved first, after which Townsend may renew any request for injunctive relief.  (ECF No. 21.)  On February 6, 2026, Townsend filed a motion for the appointment of pro bono counsel.  (ECF No. 22.)  Magistrate

Judge Almonte administratively terminated that motion on February 13, 2026, because it was not filed on the DNJ form, and directed Townsend to refile using the form available on the Court's website.  (ECF No. 23.)  Most recently, on April 28, 2026, Townsend filed a letter raising complaints of retaliation.  (ECF No. 24.)

## II.    <u>LEGAL STANDARD</u>

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  The standard demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).  A pleading that offers only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not do.  *Twombly*, 550 U.S. at 555.

In reviewing a Rule 12(b)(6) motion, the Court first separates the factual and legal elements of the claims, accepting well-pleaded facts as true and drawing all reasonable inferences in the plaintiff's favor, while disregarding bare legal conclusions and formulaic recitations of the elements of a cause of action.  *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011); *Iqbal*, 556 U.S. at 678.  The Court then determines whether the surviving factual allegations state a plausible—not merely conceivable—claim for relief.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).  The Court may consider the complaint, exhibits attached to the complaint, and matters of public record.  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

Because Townsend is proceeding *pro se*, the Court construes his pleadings liberally and holds them to less stringent standards than formal pleadings drafted by counsel.  *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  That obligation does

not require the Court to supply missing factual allegations or credit conclusory assertions untethered to any factual support. *See Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). Nor does Townsend's failure to oppose the motion entitle Defendants to dismissal as a matter of course; the Court independently assesses whether the Complaint states a plausible claim. *See Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991).

## III.  DISCUSSION

As a threshold matter, to the extent Townsend's April 28, 2026 letter (ECF No. 24) advances new factual allegations or asserts a claim for retaliation not pleaded in the Complaint, the Court declines to consider it as an amendment to his Complaint. A complaint may not be amended through briefs, letters, or other correspondence filed with the Court. *See e.g., Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."). To the extent Townsend wishes to assert a retaliation claim arising from the conduct described in his April 28, 2026 letter (ECF No. 24), he may seek leave from the Magistrate Judge to file a motion to amend, but new or amended claims not be advanced through correspondence to the Court. The Court's analysis is limited to the four claims pleaded in the Complaint.

### A.  Official Capacity Claims for Damages and Injunctive Relief

Defendants seek dismissal of all claims asserted against them in their official capacities. (ECF No. 16-1 at 6-8.) Townsend brings his civil rights claims against Defendants in both their official and individual capacities and seeks injunctive relief and damages. Section 1983 provides a cause of action against every "person" who, acting under color of state law, deprives a citizen of a federal right. 42 U.S.C. § 1983. In *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989), the United States Supreme Court held that "[n]either a state nor its officials acting in their official capacities are 'persons' under § 1983." The Supreme Court further clarified, however, that "a state

official in his or her official capacity, when sued for injunctive relief, would be a person under §

1983 because 'official-capacity actions for prospective relief are not treated as actions against the

State.'" *Will*, 491 U.S. at 71 n. 10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985);

*Ex parte Young*, 209 U.S. 123, 159–60 (1908)).

Here, the Court grants the motion to dismiss to the extent Plaintiff sues Defendants in their

official capacities for damages. The official capacity claims for injunctive relief are also dismissed

as to Counts II and IV, which fail to state a claim for relief. The motion to dismiss is denied as to

the official capacity claims for injunctive relief in Counts I and III, which, as set forth below,

survive Defendants' motion to dismiss.

### B. First Amendment Claims (Counts I and II)

#### 1. *First Amendment Free Speech (Count I)*

Townsend contends that the NJDOC's policy prohibiting inmates from receiving adult

content violates the First Amendment's Free Speech Clause. In broad terms, prisoners retain First

Amendment rights only to the extent "not inconsistent with [their] status as a prisoner or with the

legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822

(1974). Prison regulations and policies restricting an inmate's First Amendment rights are valid if

"reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).

Prison officials are also accorded "wide-ranging deference" in the adoption and execution of such

policies. *Bell v. Wolfish*, 441 U.S. 520, 547–48 (1979).

As relevant here, the First Amendment does not protect obscene material. *Miller v.

California*, 413 U.S. 15, 23 (1973) ("[O]bscene material is unprotected by the First Amendment.").

However, materials that constitute indecent sexual expression not rising to the level of obscenity

are constitutionally protected. *Reno v. American Civil Liberties Union*, 521 U.S. 844, 874–75

(1997); *see also Ramirez v. Pugh*, 379 F.3d 122, 129 n.2 (3d Cir. 2004) (explaining same); *Darby*

*v. N.J. Dep't of Corr.*, No. 20-1360 (FLW), 2022 WL 2347145, at \*4 (D.N.J. June 29, 2022) (same). The NJDOC's policy, codified at N.J. Admin. Code 10A:18-2.14, authorizes staff to withhold correspondence containing material that, taken as a whole, appeals to a prurient interest in sex, lacks serious literary, artistic, political, or scientific value, or depicts sexual conduct in a patently offensive manner. N.J. Admin. Code 10A:18-2.14(a)(6)(i)–(iii).[3]

To determine whether a prison policy or regulation violates the Constitution, courts analyze the challenged regulation under the factors set forth in *Turner*, *supra*, to ascertain whether it is "reasonably related to legitimate penological interests." *Sharp v. Johnson*, 669 F.3d 144, 156 (3d Cir. 2012) (quoting *Turner*, 482 U.S. at 89). First, "(1) there must be a "valid, rational connection"

---

[3] That subsection reads in relevant part:

> (a) Any correspondence for an inmate may be withheld in the mail room or taken from an inmate's possession by the correctional facility Administrator, designee, or custody staff if it falls within one of the following categories:
>
> . . . .
>
> 6. The correspondence contains material, which, based upon the experience and professional expertise of correctional administrators and judged in the context of a correctional facility and its paramount interest in maintaining safety, security, order, and rehabilitation:
>
> i. Taken as a whole, appeals to a prurient interest in sex;
>
> ii. Lacks, as a whole, serious literary, artistic, political, or scientific value;
>
> iii. Depicts, in a patently offensive way, sexual conduct, including patently offensive representations or descriptions of ultimate sexual acts, masturbation, excretory functions, lewd exhibition of the genitals, child pornography, sadism, bestiality, masochism, extreme close-up photos, any touching, manipulation, spreading, or opening of the genitals or buttocks (any gender), pornography, or sexually explicit material . . . .

N.J. Admin. Code § 10A:18-2.14(a)(6).

between the prison regulation and the legitimate, neutral governmental interest put forward to justify it (the 'First Turner Factor')[.]" If that factor is satisfied, Courts consider "(2) whether the inmate has alternative means of exercising the right at issue; (3) the burden that the accommodation would impose on prison resources; and (4) whether any ready alternatives to the regulation exist that would fully accommodate the inmate's rights at de minimis cost to valid penological objectives (Turner factors 2–4 are the 'Other Turner Factors')." *Id.* (citing *Turner*, 482 U.S. at 89-91).  The prison bears the burden of establishing the first *Turner* factor.  *See id.*  If the prison can meet its "slight" burden by showing that there is a "valid, rational connection" between the policy and the government's "legitimate, neutral" interest put forward to justify the policy, the court proceeds to analyze factors two through four.  *See id.*  The ultimate burden of persuasion that a prison policy or regulation is unconstitutional rests with the inmate.  *See id.* at 157 (citation omitted).

Defendants argue that "[t]he Court should find N.J.A.C. 10A:18-2.14 constitutionally valid because it meets the four elements of the *Turner* test."  (ECF No. 16-1 at 22.)  Defendants' motion falls short, however, because they do not meet their burden, albeit slight, of establishing the first *Turner* factor.  *See Sharp*, 669 F.3d at 156.  The regulation at issue, N.J. Admin. Code 10A:18-2.14 refers to "safety, security, order, and rehabilitation," and, as Defendants contend, "courts have recognized that prohibiting pornography or obscene materials is necessary to maintain prison security and to further rehabilitative goals for incarcerated persons."  (*See* ECF No. 16-1 at 22.)  Defendants cite to *Waterman v. Farmer*, 183 F.3d at 213-18 (3d Cir. 1999) (finding a rational connection between the prison's goal of rehabilitation and withholding pornographic materials from incarcerated sex offenders) and *Ramirez v. Pugh*, 486 F. Supp. 2d 421, 433 (M.D. Pa. 2007) (finding that a rational connection exists between the prison's goal of institutional security and withholding pornography from incarcerated persons) to support their claim of a legitimate penological interest.

The cases cited by Defendants, however, do not involve the regulation at issue here and both cases were resolved after development of the factual record.  The Third Circuit's decision in *Waterman* dealt with sex offenders incarcerated at the Adult Diagnostic and Treatment Center ("A.D.T.C.") in Avenel, New Jersey; in that context, the Third Circuit held that "it is beyond dispute that New Jersey has a legitimate penological interest in rehabilitating its most dangerous and compulsive sex offenders."  183 F.3d at 215 (citing *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (recognizing rehabilitation as a "valid penological objective").  Moreover, as stated in *Ramirez v. Pugh*, 379 F.3d at 127 "experts [had] testified [in *Waterman*] that sex offenders' exposure to pornography would thwart specific rehabilitative strategies and treatments administered by prison staff."  Put simply, *Waterman* involved a different population of offenders and was decided after a hearing.  In contrast, Defendants seek dismissal of Plaintiff's challenge at the pleading stage, but it is not obvious or beyond dispute that New Jersey has the same interest in rehabilitating prisoners in the general prison population, many of whom are not sex offenders. *Ramirez v. Pugh* likewise does not establish at the pleading stage that N.J. Admin. Code 10A:18-2.14(a)(6) serves a legitimate penological interest.  There, an inmate challenged a prison regulation implementing a statutory ban on the use of federal funds to distribute sexually explicit material to prisoners. The district court granted the government's motion to dismiss, holding that the regulation was valid because, intuitively, it was rationally connected to the government's asserted interest in prisoner rehabilitation.  The Third Circuit Court of Appeals reversed, finding the record inadequate as a matter of law to demonstrate the validity of the restriction "under Turner's first prong on a motion to dismiss, without any analysis or inquiry into the interests involved and the connection between those interests and the restriction at issue."  379 F.3d at 128.  The *Ramirez* court concluded that the connection between the restriction at issue and the government's

rehabilitative interest was not so obvious as to eliminate the need for the development of a factual record. *Id.* at 129.

The lesson that can be drawn from *Waterman* and *Ramirez* is that the *Turner* analysis usually requires a factual record. *See Enoch v. Perry*, 2020 WL 4057643, at *10 (W.D. Pa. July 20, 2020) ("The *Turner* analysis is exceedingly fact-intensive and does not lend itself to resolution on a motion to dismiss."); *see also Reynolds v. Quiros*, 25 F.4th 72, 82 (2d Cir. 2022) (affirming district court's finding that a prison regulation restricting sexually explicit materials did not violate plaintiffs' First Amendment rights following a two-day bench trial, including testimony from 15 witnesses). Because Defendants have not met their burden and the record is not sufficiently developed, the Court denies the motion to dismiss the First Amendment challenge to N.J. Admin. Code 10A:18-2.14(a)(6) in Count I.

The Court also denies the motion to dismiss as to individual Defendants Jonaitis and Tartaglia who allegedly withheld non-obscene videos and pictures from Plaintiff. According to Defendants, "the DOC's policy does not just cover explicitly graphic material, but rather it encompasses material which prison staff deem to appeal to a 'prurient interest in sex' or 'lacks, as a whole, serious literary, artistic, political, or scientific value.'" Defendants claim that "[c]ontrary to Townsend's assertions that the material was 'non-obscene,' officers Jonaitis, Koch, Tartaglia, and Boyle repeatedly withheld videos or pictures from Townsend because they repeatedly made determinations that Townsend's correspondence fell under the categories contemplated by N.J.A.C. 10A:18-2.14." (ECF No. 16-1 at 16-17.) Whether the withheld materials are obscene and/or fall within the parameters of the policy are questions of fact that cannot be resolved at the motion to dismiss stage. Jonaitis and Tartaglia are not entitled to "deference," as Defendants suggest prior to discovery and the development of an adequate record. Indeed, the Court must accept Plaintiff's well-pleaded facts as true at the motion to dismiss stage, and Defendants ask the

Court to resolve disputed facts in their favor and inject facts that are outside the pleadings. Therefore, the motion to dismiss the First Amendment claims against Jonaitis and Tartaglia is denied.

Defendants also contend that Townsend's First Amendment claims against Commissioner Kuhn and Assistant Commissioners Nardelli, Haley, Gies, and Bonds fail for lack of personal involvement. (ECF No. 16-1 at 9-12.) As noted above, Defendants are sued in their official capacities for injunctive relief and in their individual capacities for damages. Petitioner alleges that each commissioner personally "enacts and implements the DOC policies and administrative codes for all facilities to follow, and is directly responsible for the implementation, upholding, and enforcement of the DOC policy banning inmates from receiving non-obscene adult content." (Compl. ¶¶ 35–39.) As Defendants contend, supervisory liability generally requires some affirmative conduct by the supervisor, but this may include a supervisor's implementation or maintenance of a policy, practice, or custom that harmed the plaintiff. *See Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016); *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010). Thus, a person who has final policymaking authority may be held liable under § 1983 if that person establishes a policy that is unconstitutional and that injures the plaintiff. *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 223 (3d Cir. 2015); *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989). "[T]o establish a claim against a policymaker under § 1983 a plaintiff must allege and prove that the official established or enforced policies and practices directly causing the constitutional violation." *Chavarriaga*, 806 F.3d at 223. At summary judgment, Plaintiff will have to prove that these Defendants created or enforced the policy at issue. *See Parkell*, 833 F.3d at 331. But at this early stage, the Court finds that the allegations against Kuhn, Nardelli, Haley,

Gies, and Bonds are sufficient to show personal involvement under at least one theory of liability.[4]

Therefore, the motion to dismiss is denied on the First Amendment claims in Count I as to Kuhn, Nardelli, Haley, Gies, and Bonds.

### 2. *Establishment Clause (Count II)*

Defendants also move to dismiss Townsend's Establishment Clause claim in Count II. Plaintiff contends that the DOC's policy forces Defendants' "religious moral values" on inmates in violation of the Establishment Clause, compelling him to "accept [D]efendants' religious moral values hidden under the guise of a DOC policy." (Compl. ¶ 48.) The Court agrees with Defendants that this claim fails as a matter of law.

The Establishment Clause prohibits the government from endorsing or establishing a religion. *O'Malley v. Brierley*, 477 F.2d 785, 790 (3d Cir. 1973). Pursuant to *Kennedy v. Bremerton School District*, the Clause must be interpreted by reference to historical practices and understandings, and its core prohibition targets governmental actions that historically constituted an establishment of religion—foremost among which is legal coercion of religious participation. 597 U.S. 507, 535–37 (2022).

The Complaint does not state a cognizable Establishment Clause claim. The NJDOC's restriction on obscene material does not compel Townsend to engage in religious practice, participate in religious observances, or affirm any religious belief. It does not penalize him for failing to adhere to any religious rite. The policy is facially neutral, applies uniformly to all inmates without regard to religion, and purportedly rests on penological interests in security, order,

---

[4] Defendants point to Plaintiff's failure to show that these Defendants directed their staff to confiscate the materials at issue, or that they knew his materials were being wrongly confiscated and acquiesced in those violations, but the Court does not construe Plaintiff to raise such claims in his Complaint, which clearly bases the Commissioners' liability on their alleged creation and enforcement of the policy.

and rehabilitation—not religious mandate.  *See* N.J.A.C. 10A:18-2.14(a)(1)–(2).  That Townsend characterizes the policy's moral dimension as implicitly religious does not transform a neutral, generally applicable prison regulation into an Establishment Clause violation. Count II is dismissed without prejudice.

### C.  Procedural Due Process (Count III)

Defendants also seek dismissal of Count III, which is directed against the officer defendants, including Defendants Jonaitis and Tartaglia, and alleges that Defendants' practice of rejecting inmates' digital videos "without providing them any due notice whatsoever" or identifying the specific prohibited conduct violates Plaintiffs constitutional rights to due process (Compl. ¶¶ 52–56.)  Defendants assert that to bring this claim, Plaintiff had to exhaust state remedies by seeking relief in the New Jersey Appellate Division, and they glean this rule from Supreme Court decisions dealing with property interests.  *See Parratt v. Taylor*, 451 U.S. 527, 543-44 (1981); *Hudson v. Palmer*, 468 U.S. 517, 532-33 (1984).  The Court does not construe Townsend to assert a property interest in Count III; rather, he asserts a liberty interest in communicating by mail.  In *Vogt v. Wetzel*, 8 F.4th 182, 186 (3d Cir. 2021), the Third Circuit held that a prisoner's receipt of mail is a protected liberty interest under the Fourteenth Amendment. Thus, "prisons must notify inmates when their incoming mail is rejected."  *Id.* at 184; *see also Procunier v. Martinez*, 416 U.S. 396, 417-419 (1976).  Therefore, when prison staff rejected Townsend's digital videos, notification was required.  Plaintiff sufficiently alleges that his digital videos were rejected without notice on a number of occasions by Defendants Jonaitis and Tartaglia. At this early stage, Plaintiff states a claim under *Vogt*, and the Court denies the motion to dismiss as to Count III against Defendants Jonaitis and Tartaglia.

## D. Equal Protection (Count IV)

Count IV alleges that Defendants' "actions and omissions . . . violated Plaintiff's rights under the Constitution's Fourteenth Amendment Equal Protection Clause." (Compl. ¶ 58.) That is the entirety of Townsend's equal protection allegation.

To state a § 1983 equal protection claim, a plaintiff must allege purposeful discrimination and demonstrate that he received different treatment from that received by similarly situated individuals. *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 151 (3d Cir. 2005). He must also plead that a state actor intentionally discriminated against him because of his membership in a protected class. *Lande v. City of Bethlehem*, 457 F. App'x 188, 192 (3d Cir. 2012). Townsend's single conclusory allegation identifies no protected class, no similarly situated individuals, and no facts suggesting discriminatory intent. There is nothing in the Complaint or the regulation to suggest that NJDOC's policy does not apply uniformly to all incarcerated persons regardless of any protected characteristic. A bare assertion that defendants violated the Equal Protection Clause, unmoored from any supporting factual content, is precisely the type of pleading *Iqbal* and *Twombly* foreclose. *See Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Count IV is dismissed without prejudice.

## IV.    CONCLUSION

The motion to dismiss is granted with prejudice as to the official capacity claims for damages and without prejudice as to Counts II and IV. The motion to dismiss is otherwise denied. An appropriate Order accompanies this Memorandum Opinion.


5/29/26                                            *s/Madeline Cox Arleo*
                                                    Madeline Cox Arleo
                                                    United States District Judge